OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS
2015 OK 50
Case Number: SCBD-6223
Decided: 06/30/2015
As Corrected: July 14, 2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 50, __ P.3d __

 



 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, 
Complainant,
v.
JAMES M. DEMOPOLOS, 
Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

¶0 Respondent, a lawyer, pled guilty in the District Court of Oklahoma County 
to the crimes of obstructing a public officer, threatening to perform an act of 
violence involving or intended to involve serious bodily harm or death, and 
domestic abuse assault and battery. The Oklahoma Bar Association sought a 
post-conviction immediate suspension of Respondent's license to practice law and 
this Court issued an order of immediate suspension. Respondent sought and was 
provided a mitigation hearing held before a trial panel of the Professional 
Responsibility Tribunal. The panel recommended a six-month suspension with a 
deferred suspension of two years and one day while the Bar sought a suspension 
for two years. We hold that the appropriate discipline is a one-year suspension 
and an additional deferred suspension of one year with conditions upon 
Respondent's conduct and rehabilitation.

INTERIM SUSPENSION PREVIOUSLY ORDERED:
RESPONDENT 
IS SUSPENDED FROM THE PRACTICE OF LAW FOR ONE YEAR
COMMENCING ON 
FEBRUARY 2, 2015, WITH AN ADDITIONAL ONE-YEAR
SUSPENSION UNTIL 
FEBRUARY 3, 2017, THAT IS DEFERRED UPON
RESPONDENT'S COMPLIANCE WITH 
CONDITIONS;
RESPONDENT SHALL PAY COSTS WITHIN NINETY DAYS 


Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar 
Association, Oklahoma City, Oklahoma, for Complainant.
John W. Coyle, III, 
Coyle Law Firm, Oklahoma City, Oklahoma, for Respondent.


EDMONDSON, J.
¶1 The Respondent, a lawyer licenced to practice law in Oklahoma, pled guilty 
to three misdemeanors and the Bar Association sought to have his Bar license 
immediately suspended with a two-year suspension by commencing a proceeding 
authorized by Rule 7 of the Rules Governing Disciplinary Proceedings. We 
previously entered an order of interim suspension. After review of the record 
made before the trial panel of the Professional Responsibility Tribunal, we 
conclude that the appropriate discipline is a suspension of one year with an 
additional deferred professional suspension for one year conditioned upon 
Respondent's compliance with conditions relating to his conduct and 
rehabilitation.
¶2 A criminal Information was filed against the Respondent, James M. 
Demopolos, in the District Court for Oklahoma County.[1] One count was dismissed[2] and he pled 
guilty to violating: (1) 21 O.S. § 
540, obstructing a public officer;[3] (2) 21 
O.S. § 1378(B), threatening to perform an act of violence involving or 
intended to involve serious bodily harm or death;[4] and (3) 21 O.S. § 644(C), domestic abuse 
assault and battery.[5] Upon Respondent's guilty plea, the District Court 
deferred its two-year sentence until its review on January 6, 2017, and ordered 
Respondent to pay specific fines and costs. The court ordered he be placed under 
the supervision of the Oklahoma Department of Corrections and successfully 
complete a 52-week Batterers Intervention Program[6] with substance abuse testing.
¶3 A lawyer who has been convicted or has tendered a plea of guilty or nolo 
contendere pursuant to a deferred sentence plea agreement is subject to 
professional discipline when the crime demonstrates such lawyer's unfitness to 
practice law.[7] 
The clerk of any court in this State in which a lawyer is convicted or as to 
whom proceedings are deferred is required to "transmit certified copies of the 
Judgment and Sentence on a plea of guilty, order deferring judgment and 
sentence, indictment or information and judgment and sentence of conviction to 
the Chief Justice of the Supreme Court and to the General Counsel of the 
Oklahoma Bar Association within (5) days after said conviction."[8] The transmitted copies 
received by the Bar Association are filed in this Court by the Bar 
Association.[9] 
The Bar Association filed in this Court copies of the Information and Guilty 
Plea from Respondent's criminal case.
¶4 Upon receipt of the specified documents from a lawyer's criminal case, 
this Court enters an interim order of suspension that immediately suspends the 
lawyer from practicing law, and the lawyer is provided with an opportunity to 
show cause why the order of suspension should be set aside.[10] This Court entered an 
interim suspension order on February 2, 2015, and provided Respondent with an 
opportunity to object to the interim suspension and request a mitigation hearing 
before a trial panel of the Professional Responsibility Tribunal (PRT).[11] Respondent 
filed a waiver of his opportunity to object to the interim suspension, and he 
requested a mitigation hearing. A trial panel of the PRT held a mitigation 
hearing with Respondent being represented by counsel. After that hearing, both 
the Bar and Respondent filed their briefs in this Court addressing evidence at 
the hearing and legal argument concerning the appropriate professional 
discipline.
I. The Court's Rule 7 Review of Respondent's Conduct
¶5 This Court has exclusive original jurisdiction over Bar disciplinary 
matters.[12] 
Protecting the public and purification of the Bar are the primary purpose of 
disciplinary proceedings rather than punishment of the offending attorney.[13] In Bar 
disciplinary proceedings, this Court will conduct a de novo review of the 
record to determine if misconduct has occurred and what discipline is 
appropriate.[14] Pursuant to Rule 7.2 of the Rules Governing 
Disciplinary Proceedings (RGDP), Respondent's Guilty Plea constitutes conclusive 
evidence of the commission of the crimes that serve as the basis for 
professional discipline, and with the additional documents filed in this Court 
there is a sufficient record for our review of Respondent's Bar proceeding.[15]
¶6 The evidence before the trial panel was that one Saturday evening in May 
of 2014, Respondent was verbally abusive and consuming alcohol. His condition 
caused his wife to leave their residence and spend the night with a relative. 
Upon her return the next morning she made a 911 telephone call seeking help 
because Respondent was drunk, verbally abusive, and physically abusive having 
hit her in her arm and head with his closed hand.
¶7 The police arrived and observed his intoxicated state. He made threats of 
physical violence against his wife in the presence of the police, including 
statements describing what he would do to her when he was no longer in custody. 
They noticed a bruise on his wife consistent with her complaint. The police 
sought identifying information from him and he responded with a contemptuous 
epithet. He admitted to the police that he had hit his wife. These facts served 
as a basis for three counts in the Information filed against him and his 
subsequent guilty pleas.
¶8 Although this Court's previous order of interim suspension is a 
determination that Respondent's admitted criminal conduct facially demonstrates 
his unfitness to practice law, we also examine all of his conduct in 
light the evidence submitted at the post-mitigation hearing for our 
determination of the proper professional discipline for Respondent.[16] There are 
two basic issues in this summary disciplinary proceeding: does the conviction 
demonstrate the lawyer's unfitness to practice law, and if so, what is the 
proper professional discipline.[17] We do not adjudicate the existence of facts which 
gave rise to the criminal charges.[18]
¶9 In Givens we explained that "Violent acts in the form of domestic 
abuse demonstrate a lawyer's unfitness to practice law. We most recently found, 
'[a]s incidents of domestic ... abuse rise and become the focus of ... public 
attention, it becomes more incumbent on this Court to protect the public by 
sending a message to other lawyers that this misconduct is considered a serious 
breach of a lawyer's ethical duty and will not be tolerated.'"[19] Twenty-five years ago 
this Court discussed criminal convictions that demonstrate unfitness to practice 
law; and we noted language appearing in a Comment to one of our Rules of 
Professional Conduct that was also cited recently in Givens: ". . 
. Although a lawyer is personally answerable to the entire criminal law, a 
lawyer should be professionally answerable only for offenses that indicate lack 
of those characteristics relevant to law practice. Offenses involving 
violence, dishonesty or breach of trust, or serious interference with the 
administration of justice are in that category."[20]
¶10 A lawyer's guilty plea or criminal conviction for a violent act of 
domestic abuse is a violation of the Oklahoma Rules of Professional Conduct, 
5 O.S. Ch. 1, App. 3-A, Rule 8.4(b).[21] Respondent's guilty plea for a violent act of 
domestic abuse merits professional discipline imposed by this Court.
II. The Court's Rule 7 Review of Respondent's Conduct 
and
Mitigation of Professional Discipline
¶11 The evidence at the mitigation hearing was that Respondent had practiced 
law since 1978 and had no previous complaints for professional discipline. 
Respondent had previously worked as an oil and gas title lawyer, and no 
allegations have been made that his conduct has injuriously affected a client. 
Respondent is currently employed as a landman, and he works on title 
examinations authored by his employer who is a lawyer. An affidavit was 
submitted to show that Respondent has been compliant with the Lawyers Helping 
Lawyers program. A lawyer testified concerning Lawyers Helping Lawyers and 
Respondent's participation in the program.
¶12 A lawyer testified that he became Respondent's sponsor in Alcoholics 
Anonymous (AA). He explained that Respondent had made progress in that program. 
The evidence shows that Respondent's continuous participation in AA had been for 
less than a year at the time the mitigation hearing occurred. Another lawyer 
testified that he had shared an office with, and rented an office to, Respondent 
for several years. He stated that he had never seen him consume alcohol while 
working, or show any indication that alcohol had affected his practice of 
law.
¶13 The evidence at the mitigation hearing also included Respondent's 
previous chronic use of marijuana as well as his use of sedatives. Respondent 
successfully completed a thirty-day in-patient treatment program for substance 
abuse after his arrest. However, he had two relapses of consuming alcohol 
shortly after returning home after treatment, and these two events occurred 
approximately five months prior to the mitigation hearing. The evidence showed 
that immediately after the relapses he continued with attending his AA meetings 
and informed his AA sponsor of the events. The record shows that Respondent has 
not failed any of his post-conviction drug tests, and testimony shows that he 
has not used marijuana or sedatives after his in-patient treatment.
¶14 Testimony at the hearing included an incident that occurred eleven years 
earlier when Respondent had been drinking alcohol and was arrested after having 
a physical altercation with a male relative. No criminal charges were filed 
relating to this arrest.
¶15 Testimony at the hearing from both Respondent and his wife showed that 
Respondent had previously pushed, shoved, and slapped his wife when he was 
drinking alcohol. His wife's testimony shows that she is supportive of her 
husband, does not want him to lose his Bar license, and that she felt compelled 
to call the police because she needed help from someone to control Respondent or 
defuse the situation. She expressed her hope that the two of them could live in 
an alcohol-free environment. She testified that without alcohol consumption in 
the home they are kind to each other, there is no verbal or physical abuse 
present, and that they have been together for twenty-four years.
¶16 She stated that their future life as a married couple had to be based 
upon the absence of alcohol consumption in the home. She testified that she 
participated in Respondent's in-patient counseling sessions, attended AA 
meetings, and that she and Respondent were working on the issues as both a 
couple and as individuals. She testified that Respondent's mother, sister, two 
aunts, and an uncle had died during the previous five years and she thought that 
his increased alcohol consumption during this period was tied to what she 
perceived to be his depression concerning these events. She testified that 
during the last two years Respondent became angry when he was intoxicated. She 
testified that Respondent's consumption of alcohol occurred only at home.
¶17 In Zannotti, the lawyer pled nolo contendere to the misdemeanor 
crimes of domestic assault and battery and malicious injury to property. He 
received a two year deferred sentence by the District Court, and this Court 
imposed a two-year suspension from the practice of law. When determining 
discipline, this Court took into consideration the fact the trial court thought 
it was necessary to keep Zannotti in the criminal justice system for a full two 
years for the safety of the public.[22] In the present case, the District Court has 
Respondent being supervised by the criminal justice system for two years.
¶18 In Soderstrom, after a lawyer's plea of guilty for unlawful 
possession of a controlled substance, we suspended the lawyer for two years and 
a day.[23] We 
determined that his continued relapses with substance abuse adversely impacted 
his fitness to practice law, and a substantial period of sobriety was necessary 
before any request for reinstatement.[24] We do consider for the purpose of mitigation 
whether a lawyer's conduct has changed following medical and psychological 
treatment.[25] But we are concerned in the present case that 
Respondent's period of sobriety is less than a year after a pattern of alcohol 
and drug abuse that lasted for several years and that it became a factor in the 
domestic abuse.
¶19 In Ijams, the lawyer was sentenced on four misdemeanor counts, 
eluding a police officer, DUI-alcohol, operating a vehicle with defective 
equipment and obstructing a police officer.[26] In addition to his interim 
suspension, his license to practice law was suspended until the date of his 
completion of his deferred sentences, approximately one year after our 
pronouncement. We again considered the length of a lawyer's criminal sentence as 
one factor in arriving at the appropriate period of professional suspension to 
be imposed.[27]
¶20 Respondent's testimony included a statement of contrition and his 
humiliation and embarrassment that has arisen from his conduct. For the purpose 
of mitigating discipline we also determine whether a lawyer recognizes the 
adverse effect of his or her substance abuse and cooperates in the treatment for 
remedying the abuse.[28]
¶21 Respondent has shown his willingness to cooperate with treatment by his 
continued participation in Lawyers Helping Lawyers, AA, and the Batterers 
Intervention Program, as well as his completed in-patient treatment program. 
Respondent's brief expresses a willingness to have random drug testing and if he 
fails any test to be immediately suspended, including the panel-recommended 
two-years-and-a-day suspension upon a failed test, which would then require any 
effort for professional reinstatement to comply with the requirements for a 
lawyer who has been disbarred.[29]
¶22 We note Respondent's emphasis in the record on his attendance at a 
Batterers Intervention Program, and the fact that he started the program before 
the trial court made it a condition of his deferred criminal sentence. We 
encourage his efforts in obtaining treatment. But while we have considered 
compliance with court-ordered conditions for the purpose of mitigating 
professional discipline, this Court expects a lawyer's compliance with a 
court order as a professional attribute and such compliance is not a quid pro 
quo for mitigation. A respondent's compliance with court orders, such as 
attendance and voluntary commencement in a treatment program, is merely one 
factor when we examine the record for evidence of an actual change in 
attitude and conduct that the lawyer's treatment is designed to foster.[30]
¶23 We note and appreciate the testimony of Respondent's wife and her candid 
assessments of their marital relationship and the current conduct of Respondent. 
We also note the testimony of Respondent's AA sponsor and his positive view of 
Respondent's progress in AA. While we note that the evidence shows a link 
between Respondent's use of alcohol and his improper behavior, because of the 
recentness of his sobriety we are concerned with Respondent's resolve to 
permanently change his conduct. We have considered Respondent's absence 
of prior professional discipline.[31] We have also considered the District Court's 
two-year period of supervision by the Department of Corrections, although this 
factor is not controlling on the time a lawyer's professional license should be 
suspended.[32]
¶24 The Bar Association requests that the Court suspend Respondent from the 
practice of law for two years commencing on the date of his interim suspension. 
At the mitigation hearing, Respondent argued that no final suspension be imposed 
and that the order of interim suspension be lifted. Respondent's post-hearing 
brief argues that the trial panel's recommendation be approved.
¶25 Respondent's trial panel recommended that he receive a six-month 
suspension from the practice of law, combined with a deferred suspension of two 
years and one day, subject to his compliance with seven terms of probation. Six 
of the terms are:
(1) Respondent shall comply with all conditions of his court-imposed deferred 
sentence, including Department of Corrections probation supervision until 
released from his deferred sentence;
(2) Respondent shall refrain from any and all use of alcohol, mind-altering 
substances or illegal drugs;
(3) Respondent shall sign and maintain a contact with Lawyers Helping 
Lawyers, and have weekly contact with his mentor;
(4) Respondent shall waive all questions of confidentiality and permit his 
sponsor at Lawyers Helping Lawyers to notify the General Counsel of the Oklahoma 
Bar Association in the event of any default by Respondent in the terms of the 
probation or deferred suspension;
(5) Respondent shall attend no less than three (3) AA sessions per week; 
and
(6) Respondent shall abide by the Rules of Professional Conduct.
The seventh condition is that Respondent shall be subject to random drug 
testing through an entity specified by the trial panel's recommendation, or by a 
similar service as directed by Lawyers Helping Lawyers, and the testing shall be 
at Respondent's expense, or through application for expense assistance through 
the Lawyers Helping Lawyers Foundation.
¶26 Recommendations of a PRT trial panel are advisory and not binding on this 
Court.[33] 
This Court adjudicates all issues of fact and law in a lawyer disciplinary 
proceeding.[34] However, our review of the record should not be 
considered as diminishing the importance of the PRT trial panel and its 
recommendations. A trial panel functions as this Court's hearing examiner and 
provides a procedural conduit for the record and legal arguments by making the 
matter ready for this Court's original de novo review of the case.[35] The lawyers 
and non-lawyers who serve on trial panels of the PRT[36] receive no compensation for their 
services,[37] 
and they provide an important public service to the Bar, this Court, and the 
People of the State of Oklahoma. We agree with the trial panel that Respondent 
should have both a suspension and a deferred suspension, but we disagree with 
the trial panel's recommended time for suspension.
¶27 In Zannotti, the respondent physically attacked a person with whom 
he had a previous dating relationship when the two of them met because 
respondent was "wanting to get back together."[38] His victim was traumatized and 
needed counseling and medication as a result of the assault.[39] She obtained a protective 
order against the respondent. When discussing discipline we noted that the 
respondent tried to shift responsibility for his conduct to his victim.[40] We imposed 
a two-year suspension of respondent's license to practice law.
¶28 In Givens, the intoxicated respondent physically attacked his 
fourteen-year-old son, and two years later struck him again after he had 
received a deferred criminal sentence of eighteen months and court-ordered 
participation in a Batterers Intervention Program.[41] We noted the respondent's pattern 
of abuse, that he continued this pattern while on probation of his criminal 
sentence, and his continued substance abuse relapses while in a substance abuse 
program. We imposed a suspension of respondent's license for two years and one 
day.
¶29 In the present case, Respondent and his adult victim, his wife, have 
reconciled. They live together and she is helping him with his efforts to 
maintain sobriety. She attends meetings on alcoholism and wants their home to be 
without alcohol consumption. She did not seek or request a protective order and 
does not feel threatened by Respondent when he is sober. She testified that she 
loves her husband and that he is a loving husband when he is sober. She 
testified that no physical abuse has occurred since the events on the Sunday 
morning in May 2014. Respondent has not tried to shift to his wife any blame or 
responsibility for his physical abuse of her. Respondent has not violated a 
condition of his deferred criminal sentence. His drug tests have not shown any 
substance abuse. In a lawyer disciplinary proceeding, it is the duty of this 
Court to determine the appropriate level of discipline to be imposed, based 
on the facts and circumstances of the case.[42] We agree with the trial panel that 
these circumstances are different from those in both Zannotti and 
Givens.
¶30 However, Respondent did not limit his lack of self-control to his 
relationship with his wife. When the police asked him for identifying 
information he declined to provide the information and responded with cursing 
and a derogatory epithet. His intoxicated tirade to the police included specific 
threats of harm against his wife. His opprobrious conduct reflects on him and 
the Bar. We conclude that Respondent should be immediately suspended from the 
practice of law for one year and that he should have an additional one-year 
deferred suspension with the seven conditions recommended by the trial panel and 
as specified herein.
¶31 This Court has imposed a final suspension of a lawyer's license with that 
suspension commencing from the date of a previous interim suspension of that 
lawyer.[43] 
Respondent's immediate one-year suspension commences on the date this Court 
issued an interim suspension of Respondent's Bar license, February 2, 2015. In 
addition to this one-year suspension until February 3, 2016, we conclude that 
Respondent should continue to be professionally monitored both during and after 
this one-year suspension with an additional one-year deferred professional 
suspension of his Bar license until February 3, 2017.
¶32 We treat the immediate one-year suspension of Respondent's Bar license as 
providing him the rule-specified opportunity to seek professional reinstatement 
on or after February 3, 2016.[44] The additional one-year deferred suspension is 
conditioned upon Respondent's continued compliance with the seven conditions of 
the trial panel specified herein and the one-year deferred suspension shall 
cease on February 3, 2017, provided that Respondent does not violate any 
condition of his deferred suspension.
III. Procedure for Implementing Respondent's Deferred 
Professional Suspension
¶33 A lawyer's criminal conviction furnishes clear and convincing evidence 
that the lawyer committed the criminal acts that are subsequently used to 
warrant professional discipline in the form of a suspension or deferred 
suspension of a Bar license.[45] However, in the context of imposing a deferred 
professional suspension of a license to practice law with conditions for the 
lawyer's future conduct, we are not concerned with facts used as evidence for 
the court's deferral of the suspension, but facts showing a violation of the 
conditions of the lawyer's deferred suspension. A similar circumstance occurs 
with revocation of a probation in a criminal case.[46] Revocation of a constitutionally 
protected liberty interest in a criminal probation case typically involves 
the factual question whether the probationer has violated a condition of 
probation,[47] and in the acceleration of a deferred sentence at 
an acceleration hearing "the court only makes a factual determination involving 
the existence of a violation of the terms of the deferred sentence."[48] The 
probationer whose probation is revoked by a judicial proceeding is entitled to 
notice of his or her alleged violations of probation.[49]
¶34 A lawyer accused of professional misconduct must also be afforded due 
process of law prior to suspension or revocation of the lawyer's licence to 
practice law.[50] A lawyer receives notice of any adverse claim that 
may be used to impose professional discipline.[51] General Counsel for the Bar must 
give notice to a lawyer that the Bar has filed a request with this Court for 
implementing a deferred suspension.[52]
¶35 We have previously required that the General Counsel of the Bar 
Association notify this Court when a lawyer's professional license probation has 
been violated, and this Court then implements the deferred suspension.[53] That 
practice shall continue with General Counsel's notification filed in this Court 
showing (1) the Respondent has violated his probation, (2) a request that the 
Court immediately implement a deferred suspension, and (3) the General Counsel 
has provided notice to Respondent of the Bar's filing.
¶36 We have previously stated that a deferred suspension would commence on 
the date the conditions of deferral or probation were violated by the lawyer.[54] Making the 
effective date of the suspension the same date of the lawyer's violation 
requires the lawyer to engage in professional self-policing. A lawyer has a duty 
to protect the interests of his or her clients from adverse circumstances 
arising from a professional suspension, including the Court implementing a 
deferred suspension.[55] This self-policing concept is also found in the 
procedure for a resignation pending professional discipline where we make a 
proper resignation effective on the date it was submitted to the Oklahoma Bar 
Association.[56] The previous practice will continue that a 
deferred suspension will commence upon a respondent's violation of a condition 
of that suspension; however, the Respondent will be provided an opportunity to 
object to the General Counsel's request for implementing the deferred 
sentence.
¶37 A lawyer must be given an opportunity to object to implementation of a 
deferred professional suspension. A State may impose an interim suspension 
pending an opportunity for a prompt hearing that would definitely determine a 
fact that is used for deprivation of a state-created property right such as a 
professional bar licences where, for example, a State has an important interest 
in insuring the integrity of the practice of law carried on pursuant to that 
professional license.[57] An order of this Court implementing a deferred 
suspension of a lawyer's license to practice law because of a violation of the 
associated deferred-suspension conditions must be based upon facts before 
this Court showing that the lawyer has actually violated the probation.[58] This Court 
has a non-delegable role as a finder of facts that a respondent's conduct 
warrants the immediate implementation of a deferred suspension, i.e., a 
violation has actually occurred and the suspension should thus be implemented.[59]
¶38 Upon General Counsel filing a notification seeking to implement 
Respondent's deferred suspension, this Court will issue an interim order 
immediately implementing the deferred suspension effective the date of the 
alleged violation stated in General Counsel's notification, and providing 
Respondent an opportunity to show cause why the Court should not make the 
deferred suspension final.[60] Upon Respondent's filed waiver of his opportunity 
to respond or his failure to timely respond to the Court's order, a final order 
shall be entered implementing the deferred suspension. Upon Respondent's timely 
filed objection to the Bar's request, the Court will determine if the record is 
adequate for implementing the deferred suspension, whether the interim order 
implementing the suspension should be set aside, and take any other action that 
the Court deems appropriate.
¶39 Respondent is cautioned that should the General Counsel properly notify 
this Court of Respondent's failure to comply with one or more of the 
deferred-suspension conditions at any time prior to February 3, 2017, he is 
subject to this Court entering an interim order immediately imposing the 
one-year suspension. Respondent is cautioned that any future unprofessional 
conduct by him during his period of suspension and deferred suspension is 
subject to this Court imposing additional professional discipline when notice of 
his conduct is properly brought to our attention by the OBA.[61] If upon a 
violation of Respondent's deferred suspension, the Bar seeks to impose 
professional discipline in addition to application of the one-year deferred 
suspension, then the Bar should: (1) in the present Bar proceeding notify 
this Court of Respondent's violation for immediate implementation of the 
deferred suspension in this proceeding, and (2) utilize the proper disciplinary 
procedure for the particular misconduct alleged against the Respondent, 
e.g., the procedures specified in Rules 6, 7, or 10.[62]
IV. COSTS
¶40 In a proceeding pursuant to Rule 7 RGDP, we have imposed the costs of the 
proceeding on the lawyer receiving professional discipline.[63] In the context of a Rule 
7 proceeding, we have noted that Rule 6.16 RGDP provides the costs of the 
investigation, record and disciplinary proceedings shall be surcharged against 
the disciplined lawyer, unless remitted for good cause by this Court.[64] Rule 6.16 
requires the costs to be paid within ninety (90) days.
¶41 Respondent had notice that the costs of a Rule 7 proceeding could be 
imposed against him. No good cause for remission has been shown. The application 
of the Bar Association for assessing costs against the respondent in the amount 
of One-Thousand Two-Hundred and Fifty-One dollars and Eighty cents ($1,251.80) 
is granted. The costs shall be paid by Respondent within ninety (90) of the date 
this opinion becomes final.
V. Conclusion
¶42 Respondent is suspended from the practice of law for one year commencing 
on February 2, 2015, with an additional one-year suspension that is deferred 
upon Respondent's compliance with the conditions of the deferral until February 
3, 2017.
¶43 In the event that Respondent violates a condition of his deferred 
suspension, the General Counsel of the Bar Association shall notify this Court 
and request an immediate implementation of a one-year professional suspension 
against Respondent. In the event Respondent violates a condition of his deferred 
suspension, the effective date and commencement of the previously deferred 
one-year suspension shall be the date Respondent violated a condition of his 
deferred sentence.
¶44 Respondent is ordered to pays the costs of this proceeding in the amount 
of $1,251.80 within ninety days from the date this opinion is final.

¶45 REIF, C. J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, GURICH, JJ., 
concur.
¶46 COMBS, V. C. J., TAYLOR, J., dissent.


¶47 TAYLOR, J.,
dissenting. I would suspend the Respondent for two years. He should not be 
allowed to practice law while on criminal probation.

FOOTNOTES

[1] 
State of Oklahoma v. James M. Demopolos, CF-2014-3767, District Court of 
Oklahoma County.

[2] The 
first count of the Information alleged that Respondent had offered a bribe to 
the police officers in the form of money to release him from custody in 
violation of 21 O.S. § 381. The 
State moved to dismiss this Count and this Count was noted as dismissed in the 
Plea of Guilty.

[3] 21 O.S. § 540: "Every person who 
willfully delays or obstructs any public officer in the discharge or attempt to 
discharge any duty of his office, is guilty of a misdemeanor."

[4] 21 O.S. § 1378(B): "Any person who 
shall threaten to perform an act of violence involving or intended to involve 
serious bodily harm or death of another person shall be guilty of a misdemeanor, 
punishable upon conviction thereof by imprisonment in the county jail for a 
period of not more than six (6) months."

[5] 21 O.S. § 644(C): "Any person who 
commits any assault and battery against a current or former spouse, a present 
spouse of a former spouse, a former spouse of a present spouse, parents, a 
foster parent, a child, a person otherwise related by blood or marriage, a 
person with whom the defendant is or was in a dating relationship as defined by 
Section 60.1 of Title 22 of the Oklahoma Statutes, an individual with whom the 
defendant has had a child, a person who formerly lived in the same household as 
the defendant, or a person living in the same household as the defendant shall 
be guilty of domestic abuse. Upon conviction, the defendant shall be punished by 
imprisonment in the county jail for not more than one (1) year, or by a fine not 
exceeding Five Thousand Dollars ($5,000.00), or by both such fine and 
imprisonment. Upon conviction for a second or subsequent offense, the person 
shall be punished by imprisonment in the custody of the Department of 
Corrections for not more than four (4) years, or by a fine not exceeding Five 
Thousand Dollars ($5,000.00), or by both such fine and imprisonment. The 
provisions of Section 51.1 of this title shall apply to any second or subsequent 
offense."
21 O.S. 2011 § 644 was amended 
by Laws 2014, c. 71 § 1, eff. Nov. 1, 2014, and the language of paragraph (C) 
does not appear to have been altered by the amendment. 2014 Okla. Sess. Laws, c. 
71, § 1, pg. 233.

[6] The 
Victim Services Unit of the Office of the Oklahoma Attorney General provides 
services for persons who require domestic violence or sexual assault services 
through a domestic violence or sexual assault program; and for the purpose of 
providing this service a "'batterers intervention program' or 'batterers 
treatment program' means an agency, organization, facility or person who offers, 
provides or engages in the offering of counseling or intervention services to 
persons who commit domestic abuse." 74 O.S.2011 § 18p-1(D).

[7] 5 
O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.1: "A 
lawyer who has been convicted or has tendered a plea of guilty or nolo 
contendere pursuant to a deferred sentence plea agreement in any jurisdiction of 
a crime which demonstrates such lawyer's unfitness to practice law, regardless 
of whether the conviction resulted from a plea of guilty or nolo contendere or 
from a verdict after trial, shall be subject to discipline as herein provided, 
regardless of the pendency of an appeal."

[8] 5 
O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.2: 
"The clerk of any court within this State in which a lawyer is convicted or as 
to whom proceedings are deferred shall transmit certified copies of the Judgment 
and Sentence on a plea of guilty, order deferring judgment and sentence, 
indictment or information and judgment and sentence of conviction to the Chief 
Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar 
Association within five (5) days after said conviction. The documents shall also 
be furnished to the Chief Justice by the General Counsel within five (5) days of 
receiving such documents. Such documents, whether from this jurisdiction or any 
other jurisdiction shall constitute the charge and be conclusive evidence of the 
commission of the crime upon which the judgment and sentence is based and shall 
suffice as the basis for discipline in accordance with these rules."

[9] 
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 22, 330 P.3d 11, 16.

[10] 5 
O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.3: 
"Upon receipt of the certified copies of Judgment and Sentence on a plea of 
guilty, order deferring judgment and sentence, indictment or information and the 
judgment and sentence, the Supreme Court shall by order immediately suspend the 
lawyer from the practice of law until further order of the Court. In its order 
of suspension the Court shall direct the lawyer to appear at a time certain, to 
show cause, if any he has, why the order of suspension should be set aside. Upon 
good cause shown, the Court may set aside its order of suspension when it 
appears to be in the interest of justice to do so, due regard being had to 
maintaining the integrity of and confidence in the profession."

[11] 
State ex rel. Oklahoma Bar Ass'n v. James M. Demopolos, 2015 OK 5, S.C.B.D. No. 6223 (Feb. 
2, 2015, Published in O.B.J. Only).

[12] 
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 8, 343 P.3d 214, 
216-217, State ex rel. Oklahoma Bar Ass'n v. Funk, 2005 OK 26, ¶ 3, 114 P.3d 427, 430.

[13] 
State ex rel. Oklahoma Bar Ass'n v. Chappell, 2004 OK 41, ¶ 23, 93 P.3d 25, 31.

[14] 
Givens, 2014 OK 103, at ¶ 
9, 343 P.3d at 217, citing State ex rel. Oklahoma Bar Ass'n v. 
Soderstrom, 2013 OK 101, ¶¶ 
9-10, 321 P.3d 159, 
160.

[15] See 
Rule 7.2 at note 8 supra; Givens, 2014 OK 103, at ¶ 9, 343 P.3d at 
217; State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 1, 60 P.3d 1024, 1026 (although a 
lawyer may in the interest of explaining his or her conduct or by way of 
mitigating the discipline to be imposed submit evidence tending to mitigate the 
severity of discipline, a post-conviction disciplinary hearing will not 
relitigate the facts which gave rise to the criminal charges).

[16] 
State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 45, 318 P.2d 1114, 
1127.

[17] 
State ex rel. Oklahoma Bar Ass'n v. Hart, 2014 OK 96, ¶ 8, 339 P.3d 895, 898; 
State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 45, 318 P.2d 1114, 
1127, citing State ex rel. Oklahoma Bar Ass'n v. Cooley, 2013 OK 42, ¶ 11, 304 P.3d 453, 455.

[18] See 
note 15 supra, and citation to Shofner.

[19] 
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217 
quoting State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 24, 330 P.3d 11, 17.

[20] 
State rel. Oklahoma Bar Ass'n v. Armstrong, 1990 OK 9, 791 P.2d 815, 818 quoting Comment, 5 
O. S. Supp.1988, Ch. 1, App. 3-A, Rule 8.4 (emphasis added). See note 21, 
infra, citing Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217, 
and its reliance on Rule 8.4 and similar language found in current Rule 8.4, 
Comment 2.

[21] 
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217, 
quoting O. R. P. C. Rule 8.4(b) and Comments 2 to Rule 8.4.
Rule 8.4, O. R. P. C. provides in part: "It is professional misconduct for a 
lawyer to: . . . (b) commit a criminal act that reflects adversely on the 
lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . 
. ."
Comment 2 to Rule 8.4 provides in part: "Although a lawyer is personally 
answerable to the entire criminal law, a lawyer should be professionally 
answerable only for offenses that indicate lack of those characteristics 
relevant to law practice. Offenses involving violence, dishonesty, breach of 
trust, or serious interference with the administration of justice are in that 
category. A pattern of repeated offenses, even ones of minor significance when 
considered separately, can indicate indifference to legal obligation."

[22] See 
the explanation of Zannotti in State ex rel. Bar Ass'n v. Givens, 
2014 OK 103, ¶ 19, 343 P.3d at 
218, citing Zannotti, 2014 OK 
25 at ¶ 24, 330 P.3d 
11.

[23] 
State ex rel. Oklahoma Bar Ass'n v. Soderstrom, 2013 OK 101, ¶ 13, 321 P.3d 159, 161,

[24] See 
the explanation of Soderstrom in State ex rel. Bar Ass'n v. 
Givens, 2014 OK 103, ¶ 20, 
343 P.3d at 218-219, citing Soderstrom, 2013 OK 101 at ¶ 12, 321 P.3d 159.

[25] 
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Busch, 1998 OK 103, ¶ 50, 976 P.2d 38, 56 (we noted that the 
lawyer's conduct had not changed following his treatment when we concluded that 
his mitigation plea was unpersuasive).

[26] 
State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, 338 P.3d 639,

[27] 
Ijams, 2014 OK 93, at ¶ 
8, 338 P.3d at 642.

[28] 
Ijams, 2014 OK 93, at ¶ 
8, 338 P.3d at 642.

[29] 
State rel. Oklahoma Bar Ass'n v. Giger, 2003 OK 61, n. 34, 72 P.3d 27, 40; State ex rel. 
Oklahoma Bar Ass'n v. Wolfe, 919 
P.2d 427, 433 (Kauger, V.C.J., concurring, and joined by Watt, J.) ("A 
suspension from the practice of law for a period of two years and one day is 
tantamount to disbarment in that the suspended attorney must follow the same 
procedures for readmittance as would a disbarred counterpart.").

[30] See 
the explanation of Soderstrom in Givens, ¶ 20, that is cited in 
note 24 supra, and the reference to Busch, ¶ 50, that is cited in 
note 25 supra.

[31] 
State ex rel. Oklahoma Bar Ass'n v. Dobbs, 2004 OK 46, ¶ 106, 94 P.3d 31, 70 (absence of prior 
discipline may be considered for mitigation of professional 
discipline).

[32] 
This Court has an exclusive and nondelegable power in regulating the 
practice of law and determining professional discipline for a lawyer. State 
ex rel. Oklahoma Bar Ass'n v. Casey, 2012 OK 93, ¶2, 295 P.3d 1096, 1098; In re 
Spilman, 2010 OK 70, ¶ 10, 
240 P.3d 702, 709. A criminal 
sentence imposed by a District Court may not be used to control this 
Court's determination of an appropriate professional discipline for a 
lawyer.

[33] 
State ex rel. Oklahoma Bar Ass'n v. Bradley, 2014 OK 78, ¶ 23, 338 P.3d 629, 637; State ex rel. 
Oklahoma Bar Ass'n v. Aston, 2003 OK 101, ¶ 10, 81 P.3d 676, 678.

[34] 
State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 48, n. 50, 264 P.3d 1197, 1215. See also 
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 4, 330 P.3d 11, 12 (stipulations 
inconsistent with the record are rejected upon de novo review).

[35] 
State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, at ¶ 51, 264 P.3d at 
1216.

[36] 
Three members of the PRT serve as members of a trial panel. RGDP, 5 O.S. Ch. 1, 
App. 1-A, Rule 6.6. The Professional Responsibility Tribunal is composed of 
twenty-one members, fourteen lawyers and seven non-lawyers, with this number 
subject to increase when necessary. RGDP, Rule 4.1. The lawyer members are 
appointed by the President of the Association subject to approval by the Board 
of Governors, and the non-lawyer members are appointed by the Governor of the 
State of Oklahoma. Id.

[37] 
RGDP, Rule 4.4: "The members of the Tribunal shall receive no compensation for 
their services, but shall be reimbursed for their travel and other reasonable 
expenses incidental to the performance of their duties."

[38] 
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶¶ 5-6 , 330 P.3d 11, 13.

[39] 
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 12, 330 P.3d 11, 14.

[40] 
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 19, 330 P.3d 11, 16 (Respondent's 
testimony . . . shows that Respondent has not accepted responsibility for his 
actions and undermines the testimony of his remorse."

[41] 
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶¶ 2-3, 343 P.3d at 
215.

[42] 
State ex rel. Oklahoma Bar Ass'n v. Weigel, 2014 OK 4, ¶ 27, 321 P.3d 168, 177.

[43] 
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 24, 343 P.3d at 219 
(suspension for two years and one day); State ex rel. Oklahoma Bar Ass'n v. 
Wilcox, 2014 OK 1, ¶ 56, 318 
P.2d at 1130, (disbarred from the date of interim suspension); State ex rel. 
Oklahoma Bar Ass'n v. Willis, 1993 OK 138, 863 P.2d 1211 (suspension for 15 
months commencing on the date of interim suspension).
Similarly, we have approved resignations from the Bar Association with 
pending professional discipline proceedings and given such with an effective 
earlier date when a showing was made that the lawyer was no longer able to 
practice law as of that date. State rel. Oklahoma Bar Ass'n v. Perkins, 
1988 OK 65, 757 P.2d 825 (rule 
stated).

[44] 5 
O.S.2011 Ch. 1, App.1-A, RGDP, Rule 11.8:
A lawyer who has been suspended for two (2) years or less upon disciplinary 
charges may resume practice upon the expiration of the period of suspension by 
filing with the Clerk of the Supreme Court an original and two (2) copies of an 
affidavit affirming that affiant has not engaged in the unauthorized practice of 
law or otherwise violated the rules of the Association or the terms of the 
affiant's order of suspension. The affidavit shall also describe all business or 
professional activities of the affiant and places of residence during the term 
of the suspension. No order of Court is necessary; however, material deletions 
or misrepresentations in the affidavit shall be grounds for subsequent 
discipline.
A copy of the affidavit shall be served on the General Counsel by the lawyer 
at the time of its filing, who may within sixty days file a separate 
disciplinary complaint with the Professional Responsibility Commission stating 
the lawyer during the suspension engaged in the unauthorized practice of law or 
other actions which would render the lawyer subject to discipline.

[45] 
State ex rel. Oklahoma Bar Ass'n v. Offill, 2014 OK 27, ¶ 3, 324 P.3d 406, 407; State ex rel. 
Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 29, 323 P.3d 222, 228. See 
Shofner at note 15 supra.

[46] 
See Sonnier v. State, 2014 OK 
CR 13, ¶ 13, 334 P.3d 948, 
952 citing Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 36 
L.Ed.2d 656 (1973) and Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 
S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("In the context of parole and probation 
revocation (both judicial proceedings), the United States Supreme Court has 
confirmed that minimal due process is required, but declined to prescribe a 
particular procedure for those proceedings.") (parenthetical information in 
original).

[47] 
Black v. Romano, 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 
(1985).

[48] 
Hagar v. State, 1999 OK CR 
35, ¶ 10, 990 P.2d 894, 
898.

[49] 
Black v. Romano, 471 U.S. at 612. Cf. Sonnier v. State, 2014 OK CR 13, ¶ 13, 334 P.3d 948, 952 citing Tate v. 
State, 2013 OK CR 18, ¶ 33, 
313 P.3d 274, 283-84 (the Court 
of Criminal Appeals has stated in the context of judicial proceedings: "This 
Court has held that, in that context, a defendant must be 'sufficiently 
apprised' of the grounds on which probation or a suspended sentence is 
revoked.").

[50] 
State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 56, 264 P.3d at 1218. 
See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-239, 77 
S.Ct. 752, 1 L.Ed.2d 796 (1957) ("A State cannot exclude a person from the 
practice of law or from any other occupation in a manner or for reasons that 
contravene the Due Process or Equal Protection Clause of the Fourteenth 
Amendment."); Willner v. Committee on Character and Fitness, 373 U.S. 96, 
102, 83 S.Ct. 1175, 10 L.Ed. 244 (1963) (requirements of procedural due process 
must be met before a State can exclude a person from practicing law or from any 
other occupation in a manner or for reasons that contravene the Due Process 
Clause of the Fourteenth Amendment).

[51] 
State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 8, 23 P.3d 268, 273.

[52] 
In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 
(1968).

[53] 
State ex rel. Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 31, 323 P.3d 222, 229.

[54] 
State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶ 10, 338 P.3d 639, 643; State ex rel. 
Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 31, 323 P.3d 222, 229.

[55] 
See 5 O.S.2011 Ch. 1, App. 3-A, Rule 1.3, states in part: "A lawyer 
should pursue a matter on behalf of a client despite opposition, obstruction or 
personal inconvenience to the lawyer, and take whatever lawful and ethical 
measures are required to vindicate a client's cause or endeavor. A lawyer must 
also act with commitment and dedication to the interests of the client and with 
zeal in advocacy upon the client's behalf."
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Running, 
2011 OK 75, ¶ 15, 262 P.3d 736, 740 ("Respondent has 
shown a repeated disregard of this Court's rules governing lawyers. He has been 
suspended three times for failure to pay bar dues. In the present case, he 
continued to practice law after suspension without notifying his clients or 
withdrawing from pending litigation, all in violation of Rules 1.3 and 9.1 RGDP, 
and Rule 5.5(a) RPC.").

[56] 
State ex rel. Oklahoma Bar Ass'n v. Bourland, 2001 OK 12, ¶ 14, 19 P.3d 289, 291 (explaining that 
an effective date of a resignation could be prior to the Court's order accepting 
the resignation; and also noting "the rule-mandated duties of a lawyer subject 
to final discipline, for example, notifying clients, withdrawing from 
proceedings, and notifying the Professional Responsibility Commission."); 
State ex rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65, 757 P.2d 825, 827 ("The effective 
date of a resignation is upon filing the resignation with the Executive 
Director.").

[57] 
Barry v. Barchi, 443 U.S. 55, 64-65, 99 S.Ct. 2642, 61 L.Ed.2d 365 
(1979).

[58] 
Schware v. Board of Bar Examiners, 353 U.S. 232, 246-247, 77 S.Ct. 752, 1 
L.Ed.2d 796 (1957) (A State could not, consistently with due process, refuse a 
lawyer a license to practice law on the basis of a finding that he was morally 
unfit when there was no evidence in the record).

[59] 
State ex rel. Oklahoma Bar Ass'n v. Anderson, 2005 OK 9, ¶ 15, 109 P.3d 326, 330 ("Our duty to 
review the facts to determine if an ethical violation occurred is 
non-delegable.").

[60] 
Barry v. Barchi, 443 U.S. at 64-65.

[61] 
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Moon, 2013 OK 7, 295 P.3d 17 (during a deferred 
suspension of two years and one day a lawyer's additional acts of unprofessional 
conduct warranted disbarment). Cf. State ex rel. Oklahoma Bar Ass'n v. 
Brewer, 1989 OK 172, 794 P.2d 397, 399 (complaint of 
additional allegations of misconduct may be consolidated with reinstatement 
proceeding).

[62] See 
Brewer, 794 P.2d at 399, cited in note 61 supra, and the 
explanation in Brewer that when a disciplinary proceeding is pending, 
along with a reinstatement proceeding, and new allegations of 
professional misconduct are made by the Bar, they should be raised by filing an 
additional formal professional complaint with the Court followed by seeking 
available and appropriate procedural opportunities for consolidation to conserve 
judicial resources.

[63] 
State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶ 13, 338 P.3d 639, 643; State ex rel. 
Oklahoma Bar Ass'n v. Wilburn, 2010 OK 25, ¶ 13, 236 P.3d 79, 82; State ex rel. 
Oklahoma Bar Ass'n v. Spradling, 2009 OK 39, ¶ 10, 213 P.3d 570, 575.

[64] 
State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 3, 60 P.3d 1024, 1027 (citing Rule 
6.16, RGDP).
5 O.S.2011 Ch. 1, App. 1-A, Rule 6.16: "The costs of investigation, the 
record, and disciplinary proceedings shall be advanced by the Oklahoma Bar 
Association (or the Professional Responsibility Commission, if provision 
therefor has been made in its budget). Where discipline results, the cost of the 
investigation, the record, and disciplinary proceedings shall be surcharged 
against the disciplined lawyer unless remitted in whole or in part by the 
Supreme Court for good cause shown. Failure of the disciplined lawyer to pay 
such costs within ninety (90) days after the Supreme Court's order becomes 
effective shall result in automatic suspension from the practice of law until 
further order of the Court."
 




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2013 OK CR 18, 313 P.3d 274, TATE v. STATE
Discussed
 2014 OK CR 13, 334 P.3d 948, SONNIER v. STATE
Discussed at Length
 1999 OK CR 35, 990 P.2d 894, 70 OBJ 2766, Hagar v. State
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 65, 757 P.2d 825, State ex rel. Oklahoma Bar Ass'n v. Perkins
Discussed at Length
 1989 OK 172, 794 P.2d 397, State ex rel. Oklahoma Bar Ass'n v. Brewer
Discussed
 1990 OK 9, 791 P.2d 815, State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed
 1993 OK 138, 863 P.2d 1211, 64 OBJ 3290, State ex rel. Oklahoma Bar Ass'n v. Willis
Discussed
 2001 OK 12, 19 P.3d 289, 72 OBJ 553, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOURLAND
Discussed
 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed
 2002 OK 84, 60 P.3d 1024, STATE ex. rel. OKLAHOMA BAR ASS'N v. SHOFNER
Discussed at Length
 2003 OK 61, 72 P.3d 27, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIGER
Discussed
 2003 OK 101, 81 P.3d 676, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ASTON
Discussed
 2004 OK 41, 93 P.3d 25, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CHAPPELL
Discussed
 2004 OK 46, 94 P.3d 31, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DOBBS
Discussed
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSON
Discussed
 2005 OK 26, 114 P.3d 427, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FUNK
Discussed
 1996 OK 75, 919 P.2d 427, 67 OBJ 2051, State ex rel. Oklahoma Bar Assn. v. Wolfe
Cited
 2009 OK 39, 213 P.3d 570, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SPRADLING
Discussed
 2010 OK 25, 236 P.3d 79, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILBURN
Discussed
 2010 OK 70, 240 P.3d 702, IN THE MATTER OF THE APPLICATION OF SPILMAN
Discussed
 2011 OK 75, 262 P.3d 736, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. RUNNING
Discussed
 2011 OK 84, 264 P.3d 1197, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Discussed at Length
 2012 OK 93, 295 P.3d 1096, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CASEY
Discussed
 2013 OK 7, 295 P.3d 17, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed
 2013 OK 42, 304 P.3d 453, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed
 2013 OK 101, 321 P.3d 159, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SODERSTROM
Discussed at Length
 2014 OK 1, 318 P.3d 1114, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length
 2014 OK 4, 321 P.3d 168, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WEIGEL
Discussed
 2014 OK 20, 323 P.3d 222, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDT
Discussed at Length
 2014 OK 25, 330 P.3d 11, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ZANNOTTI
Discussed at Length
 2014 OK 27, 324 P.3d 406, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. OFFILL
Discussed
 2014 OK 78, 338 P.3d 629, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRADLEY
Discussed
 2014 OK 93, 338 P.3d 639, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. IJAMS
Discussed at Length
 2014 OK 96, 339 P.3d 895, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HART
Cited
 2014 OK 103, 343 P.3d 214, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIVENS
Discussed at Length
 2015 OK 5, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS
Cited
 1998 OK 103, 976 P.2d 38, 69 OBJ 3488, State ex. rel. Oklahoma Bar Association v. Busch
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1378, Punishment for Planning or Threatening Violent Act
Discussed
 21 O.S. 381, Bribing Officers
Cited
 21 O.S. 540, Obstruction of Public Officer - Recording the Activity of an Officer in a Public Area
Discussed
 21 O.S. 644, Punishment for Assault and Battery
Discussed at Length
Title 74. State Government
 Cite
Name
Level

 74 O.S. 18p-1, Victims Services Unit of the Office of the Attorney General
Cited